# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☒ EEOC | |

and EEOC

_____ State or local Agency, if any

| (Indicate Mr., Ms., Mrs.) Mr. Ralo Colvin | HOME TELEPHONE (Include Area Code) (334) 875-1158 |
|---|---|

| STREET ADDRESS 770 E. Circle Drive | CITY, STATE AND ZIP CODE Selma, AL 36701 | DATE OF BIRTH 11/02/76 |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME Mansfield Industry Coating Corporation | NUMBER OF EMPLOYEES, MEMBERS More than 50 | TELEPHONE (Include Area Code) (225) 752-7564 |
|---|---|---|

| STREET ADDRESS 1029 La Crete | CITY, STATE AND ZIP CODE Baton Rouge, LA 70810 | COUNTY Parish |
|---|---|---|

| NAME K2 Industrial Services, Inc. | TELEPHONE NUMBER (Include Area Code) (312) 645-7770 |
|---|---|

| STREET ADDRESS 414 N Orleans | CITY, STATE AND ZIP CODE Chicago, Illinois 60610 | COUNTY Cook |
|---|---|---|

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

| ☒ RACE | ☐ COLOR | ☐ SEX | ☐ RELIGION | ☐ AGE |
|---|---|---|---|---|
| ☒☒ RETALIATION | ☐ NATIONAL ORIGIN | ☐ DISABILITY | ☐ OTHER (Specify) | |

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA)     LATEST (ALL)
March 2003–December 2003

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

SEE ATTACHMENT

DEFENDANT'S EXHIBIT 3

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their proceedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 4-20-04    Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |

EEOC FORM 5 (Test 10/94)

Exhibit C-3.tif

Particulars of Ralo Colvin:

On March 17, 2003, I was hired as a painter making $10.00 per hour. I was a painter but not a journeyman painter. I was hired to work at Plant 2. At the time of hire, I had certification to spray industrial and work a forklift. I was primarily a brush painter and was told after 90 days I would get a $1.00 raise. I was put up high to paint many times. At least two white males who I worked with had the same position and made more money per hour than me. Johnny Reid, white supervisor, asked a white male to go up high and the white male replied, "I thought that's what ya'll hired the niggers for." This white male was not disciplined.

About October 2003 to November 2003, another white male and myself came to work late on a couple of occasions. I had already informed my supervisor that I would run a little late because I had another job and he was Ok with it. The white male would not get disciplined but I would be made to go home. I was sent home about four times between October and November 2003. After 90 days, I requested a raise and was not given a raise. I never got a raise. Whites were not written up when they refused to go up high or clean their paintbrushes.

Whites got raises and insurance. I was laid off November 5, 2003. That Sunday I was called back out to work. December 14, 2003, I was laid off again.

I got insurance papers finally in December 2003. The word "nigger" was openly used in front of the supervisor and even the superintendent. At Plant 2, where most of the whites were assigned, it was laid back. There was more work at Plant 5, which is where most blacks were assigned. The white supervisor once told me that Patrick, a black painter, was "on a monkey pill" and "on his way out."

I believe I was discriminated and retaliated against on the basis of my race, Black, in violation of the Civil Rights Act of 1964, as amended.

Ralo J. Colvin

Exhibit C-3.tif

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| | ☐ FEPA | |
| | ☒ EEOC | 2004-02650 |

MANSFIELD AMENDED CHARGE

_____ and EEOC
State or local Agency, if any

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Mr. Ralo Colvin | (334) 875-1158 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 770 B Circle Drive | Selma, Alabama 36701 | 11/02/1976 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Mansfield Industry Coating Corporation | More than 50 | (225) 752-7564 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 1029 La Crete | Baton Rouge, LA | Parish |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| K2 Industrial Services, Inc. | (312) 645-7770 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 414 N Orleans | Chicago, Illinois 60610 | Cook |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

| | | | DATE DISCRIMINATION TOOK PLACE EARLIEST (ADEA/EPA)    LATEST (ALL) |
|---|---|---|---|
| ☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ AGE | | | March 2003-December 2003 |
| ☒ RETALIATION ☐ NATIONAL ORIGIN ☐ DISABILITY ☐ OTHER (Specify) | | | |
| | | | ☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

OTHER EMPLOYER/AGENCY WHO DISCRIMINATED AGAINST ME:

NAME                                    TELEPHONE

General Electric Company          (518) 433-4308

STREET ADDRESS                    CITY, STATE AND ZIP

1 River Road                          Schenectady, New York 12345

DEFENDANT'S EXHIBIT

4

SEE ATTACHMENT FOR THE PARTICULARS

| | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | |
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| | |
| 4-05                     Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |

EEOC FORM 5 (10/94)

Exhibit C-3.tif

Particulars of Ralo Colvin:

On March 17, 2003, I was hired as a painter making $10.00 per hour for Mansfield and K-2 at General Electric. I was a painter but not a journeyman painter. I was hired to work at Plant 2. At the time of hire, I had certification to spray industrial and work a forklift. I was primarily a brush painter and was told after 90 days I would get a $1.00 raise. I was put up high to paint many times. At least two white males who I worked with had the same position and made more money per hour than me. Johnny Reid, white supervisor, asked a white male to go up high and the white male replied, "I thought that's what ya'll hired the niggers for." This white male was not disciplined.

About October 2003 to November 2003, another white male and myself came to work late on a couple of occasions. I had already informed my supervisor that I would run a little late because I had another job and he was Ok with it. The white male would not get disciplined but I would be made to go home. I was sent home about four times between October and November 2003. After 90 days, I requested a raise and was not given a raise. I never got a raise. Whites were not written up when they refused to go up high or clean their paintbrushes.

Whites got raises and insurance. I was laid off November 5, 2003. That Sunday I was called back out to work. December 14, 2003, I was laid off again.

I got insurance papers finally in December 2003. The word "nigger" was openly used in front of the supervisor and even the superintendent. At Plant 2, where most of the whites were assigned, it was laid back. There was more work at Plant 5, which is where most blacks were assigned. The white supervisor once told me that Patrick, a black painter, was "on a monkey pill" and "on his way out."

I believe I was subjected to a hostile work environment, discriminated and retaliated against on the basis of my race, Black, in violation of the Civil Rights Act of 1964, as amended.

Exhibit C-3.tif



EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Birmingham District Office

Ridge Park Place, Suite 2000
1130 22nd Street South
Birmingham, Alabama 35205-2881
(205) 731-0082
TTY (205) 731-0175
FAX (205) 731-2101

# AFFIDAVIT

My name is Ralo Colvin and I am a Black male. I reside at 770 B Circle Drive Selma, Alabama. My telephone number is (334) 875-1158. I am presently employed at Team Work Barber Shop. I was hired a painter at Mansfield Industry Coating on March 17, 2003, at $10.00 per hour. At the time of hire, I had a spraying certification and forklift operator experience from another job. I was assigned by Mansfield to work at the G.E. plant 2. My duties included brush painting, rolling, painting beams and slacks. I was assured that I would be given a $1.00 raise after ninety days. I was able to mix paint. Jack, a White, and Nat, a Black, were the only employees hired as helpers. Younger and less experienced White guys were paid $12.00 per hour, Robert, Jeff and Earl. Johnny Reed was the supervisor and the Whites would not have to work as hard as the Blacks. In September 2003, Jeff Smitherman, White, was given a raise from $10.00 to $11.00 per hour. I was not given my raise.

In April 2003, I signed a slip concerning not showing up for work. Reed sent me home for being late at 7:00. He told me that I was sent home because I was with Patrick another Black employee. Jack Richardson, White, stayed off for four day and did not call. He was not sent home. Nat, Black, was made to get an excuse for being absent before he could come back to work. The company paid show up time when the job was rained out. After we moved to plant 5, the company stopped paying show up time and made the Blacks sit in the car for two hours, instead of just allowing them to go home, like they did the Whites. Robert and other Whites refused to paint in high places and I was required to paint in the high places. The White guys were not written up.

In July 2003, Robert, White, said in the pole barn that he did not want to work with "niggers" and that he would rather go home than work with "niggers. Johnny Reed heard him say that and did not say anything. Also, Robert cursed Reed and nothing was done. Robert told me that he did a little hunting. Robert said that I could not come and hunt down there because I might be hunted. Robert came in drunk and cursing, in June or July, during orientation at the Hyundai plant. Robert was not disciplined and is still working. Robert said that he was going to buy a fifty (crack cocaine) and Troy here I come. Johnny Reed told me that Pat, (Black), is playing on a monkey pill and he was going to get rid of himself. Jack Richardson told me that Superintendent Crutchfield told him that he was going to get rid of these buzzards in the Hyundai plant. In September 2003, Jeff Smitherman, White, was asleep in the pipe rack about 16 feet above the floor. Johnny Reed woke him up and told him to go to the pole barn. He came back to the plant and went to sleep again. Reid told him to go home. Also, he missed work for a week and told the company that his girlfriend had a baby. They fired him and hired him back. Johnny Reed told me this in the truck. Whites and I, who were assigned to plant 2, were allowed to leave work at 5:10 or 5:15. The Blacks assigned to plant 5 were not

Exhibit C-3.tif

allowed to leave early. Most of the Blacks were assigned to plant 5 where there was more work and more height.

In September 2003, Earl, White, got insurance after he maxed out at $12.00 per hour. I was laid off November 5, 2003 and recalled on the following Sunday at the same pay rate. I got my insurance papers in December 2003 and was laid off again in December

SWORN TO AND SUBSCRIBED before me this the _14th_ day of
_April_____ 2005.

NOTARY PUBLIC

MY COMMISSION EXPIRES: _07/31/08_
(SEAL)

Exhibit C-3.tif

## STATEMENT OF RALO COLVIN

GE's stalls in Plants 2 and 5 had the words "niggers" and "white power" on the walls. Robert, a White craftsman, had a Nazi symbol tattooed on his hands. Robert, the White craftsman who freely used the word "nigger", wore Confederate battle flag headbands to work. Joey or ~~Joseph~~ Jeffrey Smith orman (White painter), who worked in Plant 2, regularly wore a Confederate shirt that stated, "The South Will Rise Again." Jeff Blado, a white journeyman painter with Mansfield, has a rebel flag tattoo on his right arm.

**This is a true and correct statement.**

_signature_

Ralo Colvin

_date_

Date

DEFENDANT'S EXHIBIT

5

Exhibit C-3.tif

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
**Birmingham District Office**

Ridge Park Place, Suite2000
1130 22nd Street South
Birmingham, Alabama 35205-2881
(205) 212-2100
TTY (205) 212-2112
FAX (205) 212-2105

# AFFIDAVIT

My name is Ralo Colvin, my race is black, and I reside at 770 B Circle Drive, Selma, Alabama 36701. My telephone number is (334) 875-1158. I am presently employed at Team Barber Shop. I was hired a painter at Mansfield Industrial Coating Corporation ("Mansfield") on March 17, 2003 at the wage rate of $10.00 per hour. At the time of hire, I had a spraying certification and forklift operator experience from another job. I was assigned by Mansfield to work at the General Electric ("G.E.") job site. My duties included brush painting, rolling, painting beams and slacks. I was assured that I would be given a $1.00 raise after 90 (ninety) days. I was able to mix paint. Jack Richardson (race/white) and Nathaniel Lamar (race/black) were the only employees hired by Mansfield as helpers. Younger and less experienced White employees were paid $12.00 per hour, Robert LNU, Jeff Smithereman (race/white) and Earl LNU. Johnny Reed (race/white) was the supervisor and the white employees would not have to work as hard as the black employees.

In September 2003, Smitherman (race/white) was given a raise from $10.00 to $11.00 per hour. I was not given my raise. In April 2003, I signed a slip concerning not showing up for work. Reed sent me home for being late at 7:00.am. He told me that I was sent home because I was with Patrick Lewis (race/black). Jack Richardson (race/white) stayed off work for four days and did not call in. He was not sent home. Lamar (race/black) was made to get an excuse for being absent before he could come back to work.

Mansfield paid two (2) hours "show up time" when the job was rained out. After we moved to G.E. Plant 5, the company stopped paying "show up time" and made the black employees sit in



DEFENDANT'S
EXHIBIT
6

Exhibit C-3.tif

the car for two hours, instead of just allowing them to go home, like they did the white employees. Robert LNU (race/white) and other white employees refused to paint in high places, while I was required to paint in the high places. The white employees were not written up for this.

In July 2003, Robert LNU (race/white) said in the "pole barn" that he did not want to work with "niggers" and that he would rather go home than work with "niggers." Reed heard him say that and did not say anything to Robert. Also, Robert cursed Reed and nothing was done. Robert told me that he did a little hunting. I told him I wanted to go hunting down where he lived. Robert said that I could not come and hunt down there because I might be hunted. Robert came in drunk and cursing, in June or July, during orientation at the Hyundai plant. Robert was not disciplined by Mansfield and is still working. Robert said that he was going to buy a "fifty (crack cocaine) and Troy here I come."

Reed told me that Patrick Lewis (race/black) must have took a "monkey pill" because he was talking too much and was going to get rid of himself by talking. Jack Richardson (race/white) told me that Superintendent Crutchfield told him that he was going to get rid of these "buzzards" in the Hyundai plant.

In September 2003, Smitherman (race/white) was asleep in the pipe rack about 16 feet above the floor. Reed woke him up and told him to go to the "pole barn." He came back to the plant and went to sleep again. Reed told him to go home. Also, Smitherman missed work for a week and told the company that his girlfriend had a baby. They fired him and hired him back. Reed told me this in the truck.

White employees and I, who were assigned to G.E. Plant 2, were allowed to leave work at 5:10 or 5:15 p.m. The black employees assigned to G.E. Plant 5 were not allowed to leave early. Most of the black employees were assigned to G.E. Plant 5 where there was more work and more

Exhibit C-3.tif

height.

In September 2003, Earl (race/white) got insurance after he maxed out at $12.00 per hour. I was laid off November 5, 2003 and recalled on the following Sunday at the same pay rate. I got my insurance papers in December 2003 and was laid off again in December.

I declare under penalty of perjury that the above statement is true and correct to the best of my knowledge and belief.

RALO COLVIN

DATE

Exhibit C-3.tif



**Birmingham District Office**

Ridge Park Place, Suite 2000
1130 22nd Street South
Birmingham, Alabama 35205-2881
(205) 731-0082
TTY (205) 731-0175
FAX (205) 731-2101

# AFFIDAVIT

My name is Ralo Colvin and I am a Black male. I reside at 770 B Circle Drive Selma, Alabama. My telephone number is (334) 875-1158. I am presently employed at Team Work Barber Shop. I was hired a painter at Mansfield Industry Coating on March 17, 2003, at $10.00 per hour. At the time of hire, I had a spraying certification and forklift operator experience from another job. I was assigned by Mansfield to work at the G.E. plant 2. My duties included brush painting, rolling, painting beams and slacks. I was assured that I would be given a $1.00 raise after ninety days. I was able to mix paint. Jack, a White, and Nat, a Black, were the only employees hired as helpers. Younger and less experienced White guys were paid $12.00 per hour, Robert, Jeff and Earl. Johnny Reed was the supervisor and the Whites would not have to work as hard as the Blacks. In September 2003, Jeff Smitherman, White, was given a raise from $10.00 to $11.00 per hour. I was not given my raise.

In April 2003, I signed a slip concerning not showing up for work. Reed sent me home for being late at 7:00. He told me that I was sent home because I was with Patrick another Black employee. Jack Richardson, White, stayed off for four day and did not call. He was not sent home. Nat, Black, was made to get an excuse for being absent before he could come back to work. The company paid show up time when the job was rained out. After we moved to plant 5, the company stopped paying show up time and made the Blacks sit in the car for two hours, instead of just allowing them to go home, like they did the Whites. Robert and other Whites refused to paint in high places and I was required to paint in the high places. The White guys were not written up.

In July 2003, Robert, White, said in the pole barn that he did not want to work with "niggers" and that he would rather go home than work with "niggers. Johnny Reed heard him say that and did not say anything. Also, Robert cursed Reed and nothing was done. Robert told me that he did a little hunting. Robert said that I could not come and hunt down there because I might be hunted. Robert came in drunk and cursing, in June or July, during orientation at the Hyundai plant. Robert was not disciplined and is still working . Robert said that he was going to buy a fifty (crack cocaine) and Troy here I come. Johnny Reed told me that Pat, (Black), is playing on a monkey pill and he was going to get rid of himself. Jack Richardson told me that Superintendent Crutchfield told him that he was going to get rid of these buzzards in the Hyundai plant. In September 2003, Jeff Smitherman, White, was asleep in the pipe rack about 16 feet above the floor. Johnny Reed woke him up and told him to go to the pole barn. He came back to the plant and went to sleep again. Reid told him to go home. Also, he missed work for a week and told the company that his girlfriend had a baby. They fired him and hired him back. Johnny Reed told me this in the truck. Whites and I, who were assigned to plant 2, were allowed to leave work at 5:10 or 5:15. The Blacks assigned to plant 5 were not

Exhibit C-3.tif

allowed to leave early. Most of the Blacks were assigned to plant 5 where there was more work and more height.

In September 2003, Earl, White, got insurance after he maxed out at $12.00 per hour. I was laid off November 5, 2003 and recalled on the following Sunday at the same pay rate. I got my insurance papers in December 2003 and was laid off again in December

Exhibit C-3.tif

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Birmingham District Office

Ridge Park Place, Suite2000
1130 22ⁿᵈ Street South
Birmingham, Alabama 35205-2881
(205) 731-0082
TTY (205) 731-0175
FAX (205) 731-2101

# AFFIDAVIT

My name is Ralo Colvin and I am a Black male. I reside at 770 B Circle Drive Selma, Alabama. My telephone number is (334) 875-1158. I am presently employed at Team Barber Shop. I was hired a painter at Mansfield Industry Coating on March 17, 2003, at $10.00 per hour. At the time of hire, I had a spraying certification and forklift operator experience from another job. I was assigned by Mansfield to work at the G.E. plant 2. My duties included brush painting, rolling, painting beams and slacks. I was assured that I would be given a $1.00 raise after ninety days. I was able to mix paint. Jack, a White, and Nat, a Black, were the only employees hired as helpers.   Younger and less experienced White guys were paid $12.00 per hour, Robert, Jeff and Earl. Johnny Reed was the supervisor and the Whites would not have to work as hard as the Blacks. In September 2003, Jeff Smitherman, White, was given a raise from $10.00 to $11.00 per hour. I was not given my raise.

In April 2003, I signed a slip concerning not showing up for work. Reed sent me home for being late at 7:00. He told me that I was sent home because I was with Patrick another Black employee. Jack Richardson, White, stayed off for four day and did not call. He was not sent home. Nat, Black, was made to get an excuse for being absent before he could come back to work. The company paid show up time when the job was rained out. After we moved to plant 5, the company stopped paying show up time and made the Blacks sit in the car for two hours, instead of just allowing them to go home, like they did the Whites. Robert and other Whites refused to paint in high places and I was required to paint in the high places. The White guys were not written up.

In July 2003, Robert, White, said in the pole barn that he did not want to work with "niggers" and that he would rather go home than work with "niggers. Johnny Reed heard him say that and did not  say anything. Also, Robert cursed Reed and nothing was done. Robert told me that he did a little hunting. Robert said that I could not come and hunt down there because I might be hunted. Robert came in drunk and cursing, in June or July, during orientation at the Hyundai plant. Robert was not disciplined and is still working . Robert said that he was going to buy a fifty (crack cocaine) and Troy here I come. Johnny Reed told me that Pat, (Black), is playing on a monkey pill and he was going to get rid of himself. Jack Richardson told me that Superintendent Crutchfield told me when that he was going to get rid of these buzzards in the Hyundai plant.    In September 2003, Jeff Smitherman, White, was asleep in the pipe rack about 16 feet above the floor. Johnny Reed woke him up and told him to go to the pole barn. He came back to  the plant and went to sleep again. Reid told him to go home. Also, he missed work for a week and told the company that his girlfriend had a baby. They fired him and hired him back. Johnny Reed told me this in the truck. Whites and I, who were assigned to plant 2, were allowed to leave work at 5:10 or 5:15. The Blacks assigned to plant 5 were not

Exhibit C-3.tif

allowed to leave early. Most of the Blacks were assigned to plant 5 where there was more work and more height.

In September 2003, Earl, White, got insurance after he maxed out at $12.00 per hour. I was laid off November 5, 2003 and recalled on the following Sunday at the same pay rate. I got my insurance papers in December 2003 and was laid off again in December

Exhibit C-3.tif

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

PATRICK LEWIS, JACK RICHARDSON,  )
NATHANIEL LAMAR, WILLIAM         )
RAGLAND, RALO COLVON [sic] &amp;      )
ERVIN TARVER,                       )
                               )
    Plaintiffs,              )    Case No.
                               )
v.                             )    2:06-CV-497-WKW
                               )
K2 INDUSTRIAL SERVICES, INC. and  )
MANSFIELD INDUSTRIAL, INC.,     )
                               )
    Defendants.            )

## DEPOSITION NOTICE
### (Plaintiff: Ralo Colvin)

Please take notice that defendants K2 Industrial Services, Inc. and Mansfield Industrial, Inc. ("Defendants") will take the deposition of **Ralo Colvin** at the offices of Chestnut, Sanders, Sanders, Pettaway, & Campbell in Selma, Alabama on Monday, June 7, 2007 at 1:00 p.m., pursuant to the Federal Rules of Civil Procedure, upon oral examination before a court reporter or other person lawfully authorized to administer oaths. The deposition will be taken for purposes of discovery, for use as evidence in this action, and for such other purposes as permitted under the Federal Rules of Civil Procedure. A copy of Defendants' Requests for Production is attached as Exhibit A. To the extent there exist documents which have not been produced in response to Defendants' Requests, please produce those documents prior to Plaintiff's deposition. The deposition will continue from time to time until completed.

_____
One of the Attorneys for Defendants
K2 Industrial Services, Inc.
Mansfield Industrial, Inc.

**DEFENDANT'S
EXHIBIT**

7

Exhibit C-3.tif

OF COUNSEL:
William H. King, III (KINGW5426)
Natasha L. Wilson (WILSN6654)
Haley A. Andrews (ANDRH6198)
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, Alabama 35203-3200
(205) 581-0700
(205) 581-0799 (fax)

## CERTIFICATE OF SERVICE

This is to certify that on this 30th day of May 2007, was served on counsel of record by depositing a copy of same in the United States Mail, postage prepaid, properly addressed to:

Collins Pettaway, Esq.
Chestnut, Sanders, Sanders, Pettaway & Campbell
PO Box 1290
Selma, AL 36702

Byron Perkins, Esq.
The Cochran Firm
505 North 20th Street, Suite 825
Birmingham, Alabama 35203

OF COUNSEL

2

Exhibit C-3.tif

## EXHIBIT A

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. Any and all statements, of whatever nature, taken from any person which concern the factual allegations set forth in Plaintiffs' Complaint or any claims or issues in this lawsuit.

2. Any and all calendars, diaries, logs, scheduling books, appointment books, electronic records or any other type of document which contain any notes taken by each Plaintiff relating to his employment with Mansfield Industrial, Inc. or any claims or issues in this lawsuit.

3. All documents evidencing correspondence or communications (including all e-mail or other computer messages) between you and Defendants, including any documents evidencing communications or correspondence sent by or received by any agents, employees or representative(s) of Defendants.

4. Any and all documents supporting, concerning or related to each Plaintiff's allegations or damages.

5. All of each Plaintiff's federal and state tax returns, with all accompanying forms and attachments, including W-2 forms, for 2003, 2004, 2005, and subsequent years. This request is continuing in nature and seeks all responsive documents until the trial of this case.

6. Any and all documents showing all employment compensation, of whatever kind (including any unemployment benefits), received by each Plaintiff since his employment with Mansfield Industrial, Inc. ended.

3

Exhibit C-3.tif

7. Any and all documents in your possession, custody or control, including but not limited to any document maintained on any computer, computer disk or compact disc, concerning or relating to your efforts to obtain employment since your employment at Mansfield Industrial, Inc. ended, including but not limited to, all documents regarding inquiries, job postings, cover letters, e-mail applications, interviews, etc.

8. An executed original of the enclosed Authorization for Release of Employment Records and Authorization for the Release of Protected Health Information for each Plaintiff.

9. Any and all documents that each Plaintiff submitted to, filed or otherwise gave any state and/or federal agency which relates in any way to Defendants.

10. All documents evidencing correspondence or communication (including email or other computer messages) between you and any non-party or entity concerning or relating to the allegations in Plaintiffs' Complaint.

11. All documents in the possession of you or your attorneys that were created by or emanated from Defendants.

12. All paycheck stubs for each Plaintiff from Defendants.

13. All documents evidencing any alleged retaliation and/or adverse employment action taken by Defendants regarding each Plaintiff.

14. All documents you have provided to or received from any expert witness you plan to call to testify at the trial of this matter (including all reports, summaries, work papers, notes, or other documents generated, obtained, reviewed, or otherwise relied upon by any expert witness you intend to call at the trial of this matter), and all documents consulted or relied upon by any such expert in reaching any conclusions and/or opinions in connection with those matters upon which said expert(s) will testify.

4

Exhibit C-3.tif

15. All documents in the file or in the possession, custody, or control of each expert who may give testimony at the time of trial, including reports (and all drafts of any reports) relating to each Plaintiff's allegations and all documents, notes, memorandum, or other writings of any kind prepared, received, gathered, or used as a reference or support for testimony.

16. Any and all documents not specifically requested which tend to prove or disprove any allegations made in Plaintiffs' Complaint or otherwise in this action.

17. Produce all demonstrative aids or other matters which may be disclosed, exhibited or shown during the trial, if any, of this matter (via supplementation if necessary).

18. For any charts, graphs or compilations to be used for or at trial, if any, produce all underlying data used to create the chart, graph or compilation (via supplementation if necessary).

5

Exhibit C-3.tif

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

PATRICK LEWIS, JACK RICHARDSON, )
NATHANIEL LAMAR, WILLIAM            )
RAGLAND, RALO COLVIN [sic] &        )
ERVIN TARVER                        )
                                    )
        Plaintiffs,                 )        Case No.
                                    )
v.                                  )        2:06-CV-497-WKW
                                    )
K2 INDUSTRIAL SERVICES, INC. and    )
MANSFIELD INDUSTRIAL, INC.          )
                                    )
        Defendants.                 )

PLAINTIFF RALO COLVIN ANSWER TO
DEFENDANT'S FIRST SET OF INTERROGATORIES

Comes now plaintiff, Ralo Colvin, by and through counsel and answers the defendants' first

set of interrogatories.  As follows:

1.  State whether you have taken or received any statements, either oral or in writing, from

    any person, including parties and non-parties, who had or has any information or

    knowledge relating to the allegations made the basis of this lawsuit, and, if so, state as to

    each such person his/her identity, including name, address, occupation, age and telephone

    number, the date of any such statement, and the substances of any such statement.

ANSWER:  None, other than to EEOC and my attorney.

2.  Identify all persons with knowledge of any fact(s) that support(s) or relate(s) to any of the

    allegation(s) contained in the Complaint and describe the subjects of such knowledge as

    to each person.


DEFENDANT'S
EXHIBIT
8

1

ANSWER: William Ragland, Nathaniel Lamar; Jack Richardson; Patrick Lewis; Ervin Tarver. Also, former employees, Steve <u>unknown</u>, Jeff Smitherman, Robert Smitherman, Ben Gayle and Gar, Gordon.

3. Identify all current or former employees of Defendants or General Electric with whom you or your attorneys have spoken, corresponded or otherwise communicated concerning any matter relating to the allegations of the Complaint or claims made in this lawsuit.

ANSWER: William Ragland; Nathaniel Lamar; Jack Richardson; Patrick Lewis; Ervin Tarver.

4. Identify all persons who have provided you with any written correspondence, electronic information (including emails), letters, or any other form of document(s) relating to the claims and allegations in this lawsuit, and include a description of the correspondence and/or document(s) provided.

ANSWER: ELOC, Prince Chestnut, Attorneys for Defendant K2 Industrial Service, Inc.

5. Identify any and all experts, which will testify at the trial of this matter, including the subjects upon which each expert will testify.

ANSWER: None identified at this time.

6. State whether Plaintiff sought medical, psychological, psychiatric, or other treatment for the effects of the alleged harassment and/or discrimination, and, if so:

    (a)     Describe the treatment.

    (b)    State the dates on which treatment was received.

    (c)    State the name and address of the practitioner who provided the treatment.

    (d)    Describe the practitioner's credentials or type of practice.

ANSWER: None.

2

Exhibit C-3.tif

7.  Please provide the style of all lawsuits to which Plaintiff has been a party, either as a Plaintiff or Defendant, including civil, criminal, domestic, and workers' compensation actions, a brief description of the substance of each lawsuit identified, and the ultimate outcome of each such lawsuit.

ANSWER: None.

8.  State whether you have ever filed a claim charging employment discrimination on the basis of age, race, sex, national origin, religion, or disability other than the claim at issue in this case, and for each claim state:

    (e)    Date filed.

    (f)    Parties named.  ··

    (g)    Description of allegedly discriminatory conduct.

    (h)    Description and outcome of proceedings.

ANSWER:  None.

9.  Identify each and every action you or anyone acting on your behalf took, after your employment with Mansfield Industrial, Inc. ended, to seek and obtain any alternative employment or income source. This interrogatory is continuing in nature and covers the time period from the end of your employment with Mansfield Industrial, Inc. to the trial of this lawsuit.

ANSWER: I went to file for unemployment, which was denied.

10. If you have refused to produce any document(s) requested in Defendants' Document Requests to Plaintiffs, identify each such document and state the ground(s) for withholding the document.

ANSWER: None.

3

Exhibit C-3.tif

11. Give a complete history of your employment stating each employer, salary or rate of pay, title or position held, dates of any title or position changes, reasons for title or position changes or changes in employment, duties you performed or were responsible for in each title or position, and compensation and benefits associated with each title or position. . This interrogatory is continuing in nature and should include all employers for which you have worked from the time your employment at Mansfield Industrial, Inc. ended to the trial of this lawsuit.

ANSWER: After my employment with Mansfield, I went to welding school at Wallace Community College for 11 months. As of now, welding at Iron Ideals, GA and barbering.

12. Identify all meetings that you attended during your employment with Defendants where an employee(s) or representative(s) of Defendants announced or discussed any aspect of Defendants' discrimination and/or harassment policy.

ANSWER: No meetings with Mansfield.

13. Please state the type (e.g., lost wages, back pay, mental anguish, punitive damages, etc.) and exact amount of each item of damages for which you seek recovery in this lawsuit.

ANSWER: My attorneys will provide.

14. Identify each hospital, physician, chiropractor, osteopath, psychiatrist/psychologist, social worker or counsel, pharmacist or pharmacy, and/or other medical practitioner or healthcare provider, who has seen, treated, and/or provided medication for Plaintiff in the last ten (10) years, and provide a description of the injury and/or affliction, the dates of treatment and/or visits, and the type of treatment rendered and/or medication prescribed.

ANSWER: None.

4

Exhibit C-3.tif

15. Identify all Mansfield Industrial, Inc. employees who worked on your "shift" at the time

each alleged incident of harassment or discrimination took place and at the time your

employment with Mansfield Industrial, Inc. ended.

ANSWER:  Ben Gail, Nathaniel Lamar, Ervin Tarver, Michael "Corey" Watson, Cindy,

Robert Smitherman, Patrick Lewis, Jack Richardson, William Ragland.

_____
RALO COLVIN

SWORN TO and SUBSCRIBED before me this _21st_ day of _May_
2007.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES: _6/6/09_


_____
Collins Pettaway, Jr.(PET008)
Attorney for Plaintiffs
CHESTNUT, SANDERS, SANDERS,
PETTAWAY & CAMPBELL, L.L.C.
P. O. Box 1290
Selma, AL  36702-1290


Bryon R. Perkins
Attorney for Plaintiffs
THE COCHRAN FIRM
505 N. 20th Street, Ste. 825
The Financial Center
Birmingham, AL 35203


5

Exhibit C-3.tif

## CERTIFICATE OF SERVICE

This is to certify that I have on this the 22nd day of _____May_____ 2007 served a copy of the foregoing answers by depositing the same in the U.S. mail properly addressed with postage prepaid upon:

William H. King
Natasha L. Wilson
Haley A. Anderson
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 N. 20th Street
Birmingham, AL  35203-3200

OF COUNSEL

6

Exhibit C-3.tif

06/01/2006  15:23   2052441171         THE COCHRAN FIRM PC              PAGE  02/16

IN THE UNITED STATES DISTRICT COURT

FOR THE    MIDDLE DISTRICT OF ~~ALABAMA~~

~~WESTERN~~    DIVISION.

NORTHERN

*RECEIVED*

*P 6: 13*

*R HACKETT, CLK*

PATRICK LEWIS, JACK          )
RICHARDSON, NATHANIEL LAMAR)
WILLIAM RAGLAND,RALO COLVON)
& ERVIN TARVER               )
                             )
        Plaintiffs,          )
                             )
v.                           )
                             )
K2 INDUSTRIAL SERVICES, INC  )
and MANSFIELD INDUSTRIAL     )
COATING, Inc., a Corporation )
                             )
                             )
        Defendant.           )

*CA: Z:06cv 497-SRW*

CIVIL ACTION NO.:
CV
JURY TRIAL DEMANDED

## COMPLAINT

This action is brought to redress a pattern and practice of employment discrimination

based on race and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended,

42 U.S.C. § 2000e et seg., the Civil Rights Act of 1991, and 42 U.S.C. § 1981 and 1981(a),

common law breach of contract, negligence and outrage. Plaintiffs alleges a continuing violation

of Title VII of the [Civil Rights Act of 1964", 42 U.S.C. § 2000e et seg.. as amended, the [Civil

Rights Act of 1991," and 42 U.S.C. § 1981 and 1981(a).

**DEFENDANT'S EXHIBIT**

*9*

Exhibit C-3.tif

## I.    JURISDICTION

1.    The jurisdiction of this Court is invoked by the plaintiffs pursuant to 28 U.S.C. §§ 1331, 1343(4) and 28 U.S.C. §§ 2201 and 2202. This suit is authorized and instituted pursuant to the Act of Congress known as "The Civil Rights Act of 1866," 42 U.S.C. § 1981, and 1981(a) and The Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. as amended by the Civil Rights Act of 1991. The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights secured by Title VII and 42 U.S.C. § 1981, and 1981(a) providing for injunctive and other relief against racial discrimination and a racially hostile working environment. Plaintiffs claims of common law breach of contract, negligent hiring and negligent retention and outrage arise out of the same facts as plaintiffs federal claims.

2.    Plaintiffs  have fulfilled all conditions precedent to the institution of this action under Title VII of the Act of Congress known as the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq. Plaintiffs  timely filed this action within the two and/or four-year statute of limitations set forth under 42 U.S.C. § 1981. And within ninety (90) days of the receipt of his notice of right to sue pursuant to Title VII.

## II.    PARTIES

3.    Plaintiffs, Patrick Lewis, (hereinafter Lewis), Nathaniel Lamar (hereinafter Lamar), William Ragland (hereinafter Ragland), Ralo Colvir. (hereinafter Colvin), and Ervin Tarver

Exhibit C-3.tif

06/01/2006  15:23    2052441171    THE COCHRAN FIRM PC    PAGE  04/18

(hereinafter Tarver) are African-American male and residents of Alabama and a citizens of the

United States.  Plaintiff Jack Richardson (hereinafter Richardson) is a white male. Plaintiffs,

Patrick Lewis, Jack Richardson, Nathaniel Lamar, William Ragland, Rolo Colvin, and Ervin Tarver

are persons aggrieved; under Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. §

2000e et seq., the 0Civil Rights Act of 1964," as amended. 42 U.S.C. § 2000e et seq., the 0Civil

Rights Act of 1991,0 and 42 U.S.C. § 1981 and 1981(a).

4.    Defendant, K2 Industrial Services, Inc. And Mansfield Industrial Coating, Inc. are

entities doing business in Alabama.  K2 Industrial Services, Inc is a Chicago, Illionois corporation

and the parent company of Mansfield Industrial. K2 and Mansfield are  an entities subject to

suit under Title VII of the 0Civil Rights Act of 1964,0 as amended, 42 U.S.C. § 2000e et seq., the

0Civil Rights Act of 1991,0 and  42 U.S.C. § 1981 and 1981(a).  The defendants employs at least

fifteen (15) persons.

III.    STATEMENT OF FACTS

5.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 4 above

with the same force and effect as full set out in specific detail hereinbelow.

6.    Plaintiffs, area all former employees of the defendant Mansfield working in

Alabama. Each of the Employees were employed with the defendant in 2002 or 2003.

7.    Each of the plaintiff0s suffered racial discrimination at the hands of their

employer including the creation of a racially hostile working environment. Plaintiff Richardson

Exhibit C-3.tif

was discriminated and retaliated against for his association with African American employees

including but not limited to the other plaintiffs. Once the white Superintendent Johnny

Cruthfield found out that some of the African American employees rode to work with Richardson,

he began to refer to Richardson as a nigger lover. Richardson also heard Crutchfield

refer to other African American employees as □ dumb ass niggers.□

## PATRICK LEWIS

8.      Patrick Lewis is an African American male and former employee of K2 and

Mansfield. Lewis was hired March 10, 2003 as a journeyman painter. Prior to being hired at

Mansfield he had 18 years experience as an industrial painter. Two of the white employees, Earl

( last name unknown) and the foreman Johnny Reed, did not know painting. Out of

approximately 10 employees, I was the only African American employee assigned to plant 2.

9.  During my employment I was referred to as a black bastard and an □

arrogant nigger. Moreover, I witnesses white employees refer to Mexican employees as

wet back scumb. I also witnessed a white employee pull a knife on and threaten a

Mexican emplyee. After complaining to Mansfield□s management, I was retaliated against in that I

was transferred to another job site in Atlanta for my opposition to racial discrimination.

10.     White employees were  allowed to receive pay for rain days, however, I was denied

this opportunity and upon information and belief other African American employees were denied

Exhibit C-3.tif

the same opportunity to work and receive pay for rain days. In addition I was denied the position of a regular full-time employee which would have allowed me to receive full employee benefits including medical and retirement benefits.

11.    My employment was terminated allegedley for cursing at a white supervisor who had cursed me for allegedly being late, however. I was not late. Moreover, while employees cursed all of the time and were not disciplined nor was there employment terminated.

## JACK RICHARDSON

12.    Jack Richardson, is a while male who was employed with the defendant in January 2003 as helper. Pryor to being hired at Mansfield he did not have any prior painting experience.  During his employment Richardson rode to work with African American employees. Throughout his employment Richardson witnessed a difference of treatment between himself and African American employees and witnessed the use of racial slurs by white supervisory employees including the white Superintendent Cruthfield. For example, Richardson witnessed that when the African American employees were late they were in some way disciplined, however, he was never disciplined. Moreover, as a white employee he would be paid for showing up on rain days, however, when he showed up with the African American employees, neither he or the African American employees would be paid.

13.    In June 2003, Mansfield hired a white male named Robert, last name unknown. In

Exhibit C-3.tif

~~my opinion, Robert was a racist. For example Robert would refer to African American employees~~

as [ ignorant niggers] and Robert would state openly at work that he hated to work

with niggers and Mexicans. Robert also referred to African American employees as

stupid niggers. These statement were often made in the presence of Cruthfield and

Supervisor Reed, however. Mansfield never disciplined Robert for these statements.  Robert and

Cruthfield found out that one of the African American employees was riding to work with me

and they started refering to me as a a [ nigger lover.] I also heard Cruthfield say that

if it was up to him he would not give them [ dumb ass niggers] their checks.

### NATHANIEL LAMAR

14.   Nathaniel Lamar was employed with the defendant in September 2002 as a

laborer.  Lamar was performing duties as a painter and had prior experience as a painter,

however he was paid less than whites doing the same job who did not have as much experience

and who did not know how to mix paint. Tarboughout my employment I was treated differently

and disciplined more harshly for small infractions than white employees who made the same

infractions. For example, white employees were paid show time on rain days but African

American employees were not paid for rain days. Johnny Cruthfield and Johnny Reed would

disciplined African American employees for being late however, white employees could be late or

miss work and not be discplined.

Exhibit C-3.tif

## WILLIAM RAGLAND

15.  Ragland was employed with the defendant in March 2003 as a helper. His job duties included operating heavy equipment, assembling scaffolds, brush painting and roll painting. At the time Ragland was hired he had coating experience and held a certification card. During my employment whites were treated differently than African American employees. For example, when whites were late or did not show up for work they were not disciplined or terminated. Moreover, white employees were given insurance benefits where as African American employees were denied insurance benefits and/or had to spend more time on the job before they received insurance benefits from the defendant.

## RALO CALVIN

16.  Calvin was employed with the defendant on march 17, 2003 as a painter. At the time of hire Calvin had a spraying certification and forklift operator experience. However, he was paid less than white employees with less experience. Additionally whites were paid show up time for rain days wherein African American employees were not.

17. During my employment I was also subjected to a racially hostile environment. For example, Robert a white employee stated that he did not want to work with 0 niggers0 and that he would rather go home than work with niggers. Johnny Reed, a supervisor heard this but did not discipline Robert.

18. KC/Mansfield0s actions evidence a pattern and practice of racial discrimination in

Exhibit C-3.tif

violation of Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991,

and 42 U.S. C. § 1981.

IV.   STATEMENT OF CLAIMS:

COUNT I:   VIOLATION OF 42 U.S.C. SECTION 2000e TITLE

VII

19.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 18 above

with the same force and effect as fully set out in specific detail hereinbelow.  This cause of

action is brought against the defendant Farmers only.

20.    Plaintiffs have been discriminated against and treated differently than similar

situated white employees solely because of their race, African American or association with

people of the African American race,  in violation of Title VII of the Civil Rights Act of 1964, as

amended by the Civil Rights Act of 1991.  This treatment by the defendant has affected the

terms and condition and enjoyment of plaintiffs employment.

21.    Furthermore, said acts of discrimination have affected the income of the

plaintiffs and denied them insurance benefits.

22.    Plaintiffs, whether one or more, complained to Management about the difference

in treatment, however, the all white management staff of the K2/Mansfield failed or refused to

take any corrective remedial action.  Indeed, white managerial employees of the defendant would

Exhibit C-3.tif

refer to the plaintiffs in a racially derogatory manner and plaintiffs were the object of racially derogatory slurs and jokes.  Plaintiffs were forced to be supervised by agents of the defendant, who demonstrated a general animus for blacks. Said animus affected the terms, conditions and enjoyment of the plaintiffs work and their income.

23.    This reckless and willful discrimination  on the part of the defendants constitutes a violation of the plaintiffs statutory rights pursuant to Title VII of the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1991.

24.    As a further consequence and effect of the defendants unlawful conduct and practices, the plaintiffs was deprived of income and other compensation and benefits.

25.    Plaintiffs  have suffered embarrassment, humiliation, mental distress and emotional pain and anguish as a consequence of the defendant's racially discriminatory and demeaning and unlawful conduct.

26.    The plaintiffs have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit, and an action for injunctive, declaratory, and other relief, including punitive and compensatory damages, is his only means of securing adequate relief. The plaintiffs are now suffering and will continue to suffer irreparable injury from the defendants unlawful policies and practices as set forth herein unless enjoined by this Court.

## COUNT II:   42 U.S.C. SECTION 1981 and 1981(a)

27.    Plaintiffs  re-allege and incorporates by reference paragraphs 1 through 18 above

Exhibit C-3.tif

with the same force and effect as full set out in specific detail hereinbelow.

28.    The effect of the defendants' discrimination as outlined above has been to deprive the plaintiffs of the same right to make and enforce contracts as is enjoyed by similarly-situated white persons in violation of 42 U.S.C. § 1981 and 1981(a).

29.    As a further consequence and effect of the defendants' unlawful conduct and practices, the plaintiffs were deprived of income and other compensation and benefits.

30.    Plaintiffs have suffered embarrassment, humiliation, mental distress and emotional pain and anguish as a consequence of the defendant's racially discriminatory, demeaning and unlawful conduct.

31.    The plaintiffs have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit, and an action for injunctive, declaratory, and other relief, including punitive and compensatory damages, is his only means of securing adequate relief. The plaintiff is now suffering and will continue to suffer irreparable injury from the defendants' unlawful policies and practices as set forth herein unless enjoined by this Court.

## COUNT III   RETALIATION SECTION 704(a) CIVIL RIGHTS ACT OF 1964 AND 42 U.S.C. SECTION 1981

32.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 18 above with the same force and effect as full set out in specific detail hereinbelow.

33.    Plaintiffs have been retaliated against for opposing or participating in opposition

Exhibit C-3.tif

to racial discrimination.

34.    The effect of the defendants' retaliation as outlined above has been to deprive the plaintiffs of the right to oppose discriminatory business practices in violation of Title VII and 42 U.S.C. § 1981 and 1981(a).

35.    As a further consequence and effect of the defendants' unlawful conduct and practices, the plaintiffs were deprived of income and other compensation and benefits.

36.    Plaintiffs have suffered embarrassment, humiliation, mental distress and emotional pain and anguish as a consequence of the defendant's racially retaliatory and demeaning and unlawful conduct.

37.    The plaintiffs have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit, and an action for injunctive, declaratory, and other relief, including punitive and compensatory damages, is his only means of securing adequate relief. The plaintiff is now suffering and will continue to suffer irreparable injury from the defendants' unlawful policies and practices as set forth herein unless enjoined by this Court.

## COUNT IV COMMON LAW BREACH OF CONTRACT

38.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 18 above with the same force and effect as full set out in specific detail hereinbelow.

39.    K2/Mansfield entered into a contract whereby the defendant(s), agreed to support the plaintiffs' efforts, in good faith.. Defendant breached the duty of good

Exhibit C-3.tif

faith by failing to assist the plaintiffs and by altering the terms and conditions of their

employment.

40.    The plaintiffs has no plain, adequate, or complete remedy at law to redress the

wrongs alleged herein and this suit, and an action for injunctive, declaratory, and other relief,

including punitive and compensatory damages, is his only means of securing adequate relief.

The plaintiffs are now suffering and will continue to suffer irreparable injury from the

defendants' unlawful policies and practices as set forth herein unless enjoined by this Court.

## COUNT V:   NEGLIGENT TRAINING, SUPERVISION AND RETENTION

41.    Plaintiffs re-allege and incorporates by reference paragraphs 1 through 18 above

with the same force and effect as full set out in specific detail hereinbelow.

42.    K2/Manisfield was negligent in failing to properly train their agents in such a

manner as to prevent the racial discrimination which proximately caused injury to the plaintiffs.

43.    K2/Manisfield was negligent in failing to properly supervise its managerial

employees/agents in a manner which would have prevented the racial discrimination which

proximately caused injury to the plaintiffs.

44.    K2/ Manisfield was negligent in retaining employees who harbored racial animus

and ill will towards people of color and who were in a position of authority over the plaintiffs.

Said retention proximately caused  injury to the plaintiffs.

Exhibit C-3.tif

45.    The plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit, and an action for injunctive, declaratory, and other relief, including punitive and compensatory damages, is his only means of securing adequate relief. The plaintiff is now suffering and will continue to suffer irreparable injury from the defendants' unlawful policies and practices as set forth herein unless enjoined by this Court.

## COUNT VI:   OUTRAGE

46.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 18 above with the same force and effect as full set out in specific detail hereinbelow.

47.    The actions of the defendant(s) in all respects to the claims in this law suit concerning the relationship between the plaintiffs' and K2/Mansfield  was intentional and reckless, and so extreme and   outrageous that it has caused the plaintiffs' emotional distress so sever that no reasonable person, or reasonable black person, could be expected to endure the defendants' actions.

48.    The plaintiffs have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit, and an action for injunctive, declaratory, and other relief, including punitive and compensatory damages, is his only means of securing adequate relief. The plaintiffs are now suffering and will continue to suffer irreparable injury from the defendants' unlawful policies and practices as set forth herein unless enjoined by this Court.

Exhibit C-3.tif

IV.   PRAYER FOR RELIEF

WHEREFORE, the plaintiffs respectfully prays that this Court:

1.    Issue a declaratory judgment that the defendants' acts, policies, practices, and procedures complained of herein have violated and continue to violate the rights of the plaintiffs as secured by The Civil Rights Act 1964, as amended, "Civil Rights Act of 1866," 42 U.S.C. § 1981, as amended, and the Civil Rights Act of 1991.

2.    Grant the plaintiffs a permanent injunction enjoining the defendants, its agents, successors, employees, attorneys and those acting in concert with the defendant and at the defendants' request from continuing to violate the plaintiffs' rights.

3.    Enter an Order requiring the defendants to make the plaintiffs whole by granting appropriate declaratory and injunctive relief, and back-pay, front-pay (plus interest), the reasonable value of all benefits lost, as well as nominal and/or compensatory and punitive damages.

4.    The plaintiffs further pray for such other relief and benefits as the cause of justice may require, including an award of attorney fees.


PLAINTIFFS DEMAND TRIAL BY STRUCK JURY ON ALL ISSUES
TRIABLE BY JURY.

Respectfully submitted,

Exhibit C-3.tif

06/01/2006  15:23   2052441171          THE COCHRAN FIRM PC              PAGE  16/18

Byron R. Perkins
Alabama Bar No. ASB-0163-N75B
Attorney for Plaintiffs

OF COUNSEL:

The Cochran Firm
505 North 20th Street Suite 825
The Financial Center
Birmingham, Alabama  35203
(205) 244 1115
BPERKINS@Cochranfirm.com

Prince Chestnut
Alabama Bar No. ASB-1709-R76C
Attorney for Plaintiffs

OF COUNSEL
Chestnut, Sanders, Sanders
Pettaway & Campell, LLC
One Union Street
Post Office Box 1200
Selma, Alabama 36701

PLAINTIFFOS ADDRESS:
All PlaintiffOs in care Of:
c/o   Prince Chestnut, Esq
Chestnut, Sanders, Sanders, Pettaway & Campell, LLC
One Union Street
P.O. Box 1200
Selma, Alabama   36701

Exhibit C-3.tif

06/01/2006  15:29    2052441171              THE COCHRAN FIRM PC              PAGE  11/18

## DEFENDANTS' ADDRESS:

K2 Industrial Services, Inc.
414 N. Orleans Suite 202
Chicago, Il 60610

Manisfield
The Corporation Company
2000 Interstate Park, Suite 204
Montgomery, Alabama    36109

Truck Insurance Exchange
The Corporation Company
2000 Interstate Park, Suite 204
Montgomery, Alabama    36109

Fire Insurance Exchange
The Corporation Company
2000 Interstate Park, Suite 204
Montgomery, Alabama    36109

Mid-Century Insurance Company
The Corporation Company
2000 Interstate Park, Suite 204
Montgomery, Alabama    36109

Exhibit C-3.tif

06/01/2006   15:23    2052441171              THE COCHRAN FIRM PC                    PAGE  16/18

Farmers New World Life Insurance Company

Mr. Knox Argo
300 South Hall
Montgomery, Alabama    36102

Mr. Michael T. McMahon
District Manager
2021 West Clinton Avenue, Suite A
Post Office Box 205
Huntsville, Alabama    35804

Mr. Ed Girard
Division Marketing Manager
22 Inverness Parkway #320
Birmingham, Alabama    35242

Exhibit C-3.tif

6/15/06

7005 3620 0000 2544 5445

FFICE OF CLERK
NITED STATES DISTRICT COURT
IIDDLE DISTRICT OF ALABAMA
O. BOX 711
ONTGOMERY, AL 36101-0711

Mansfield Industrial, Inc.
Hop. Agent: LexisNexis Ducument Solutions Inc
150 S. Perry Street
Montgomery, AL 36104

Exhibit C-3.tif