IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| PATRICK LEWIS, JACK RICHARDSON, NATHANIEL LAMAR, WILLIAM RAGLAND, RALO CALVIN & ERVIN TARVER, | ) ) ) ) | |
| | ) | |
| PLAINTIFFS, | ) ) | CASE NO. |
| | ) | |
| V. | ) ) | 2:06-CV-497-SRW |
| K2 INDUSTRIAL SERVICES, INC. AND MANSFIELD INDUSTRIAL, | ) ) ) | |
| | ) | |
| DEFENDANTS. | ) | |

**AFFIDAVIT OF CECILE VEZINAT**

Having first been duly sworn upon her oath, the Affiant states as follows:

1.     I am over the age of 18, sound in mind and body, and capable of making this affidavit.

2.     I am the Human Resources Director for Mansfield Industrial, Inc. ("Mansfield"). I have been employed in that capacity since May 6, 1996.

**A.     Company Structure**

3.     Mansfield  is a wholly owned subsidiary of K2 Industrial Services ("K2").

4.     All of the plaintiffs in this action were employees of Mansfield, and not K2. All of the plaintiffs' compensation came directly from Mansfield.  K2 is not a proper defendant in this case.

5.     Mansfield is engaged in the business of industrial painting and coating contract work.

**EXHIBIT G**

Exhibit G.tif

6.    Pursuant to agreements between Mansfield and its customer, GE Plastics ("GE"), Mansfield performed painting and coating contract work for a maintenance project at GE's Burkville, Alabama facility (the "GE site") from 2001 until January of 2004.

7.    Mansfield's contract with GE was a "hard dollar contract," meaning GE paid Mansfield one total price for all labor and materials used to complete the job.

8.    Each of the plaintiffs worked for Mansfield at the GE facility, and Johnny Crutchfield was the Mansfield superintendent there.

**B.    Mansfield Policies and Procedures**

9.    When hired by Mansfield, every employee receives and is trained on a Code of Conduct & Safe Practices: Employee Handbook ("Employee Handbook").

10.    Employees are also required to view an orientation video which explains Mansfield's policy on discrimination, as well as other Mansfield policies and procedures.

11.    After reviewing the handbook and video, Mansfield employees are tested on a series of safety policies and procedures.  After taking each of the nine tests, employees are required to sign a Handbook Orientation Testing Log, indicating that they actually took the tests and understand the training they received.

12.    Likewise, every employee is required to sign a Receipt, Acknowledgment, and Consent Form, acknowledging that they received the handbook and will follow Mansfield's policies.

13.    When hired by Mansfield, every employee receives and is trained on a "Code of Conduct & Safe Practices: Employee Handbook."

14.    At every jobsite, including the GE site, Mansfield displays posters explaining the proper course of action for employee complaints.

## C.    Hourly Pay

15.    Mansfield employees work in a variety of positions, depending on their experience, skill level, and job availability. The following are positions which were available at the GE job site.

a.    "Helpers"- The helper positions at Mansfield are filled by workers with little or no previous experience or skills related to painting. Helpers are essentially laborers. Many helpers are given the opportunity to gain painting experience while working at Mansfield, and they often become painters.   The initial pay rate for all helpers is $8.00 an hour.

b.    "Painters" – Painters are individuals with a greater level of experience than helpers.  Painters must have some prior painting experience painting. Painters generally do "brush and roll" painting or "spraying." Painters' pay generally ranges from $9.00 an hour to $10.50 an hour, depending on level of skill and experience.

c.    "Blaster Painters" – Blaster painters possess a greater level of skill and experience than painters.  Blaster painters have experience in sandblasting and other industrial painting techniques.  Blaster painters' pay generally ranges from $12.50 an hour to $13.50 an hour, depending on level of skill and experience.

d.    "Supervisors" – Supervisors are experienced painters who demonstrate leadership or managerial skills. Supervisors usually oversee one or more crews on a given jobsite.  Supervisors are generally paid $14.50 an hour and up, depending on job responsibility and experience.

Exhibit G.tif

16.     Any pay raises are based solely on merit.  To earn a raise, an employee must demonstrate a good quality of work.

17.     Particular Helpers at the GE jobsite:

a.     Nathaniel Lamar was hired as a helper because he did not indicate any prior painting experience or qualifications on his application for employment.  Lamar indicated only that he had experience as a "painter helper."  Lamar's initial pay rate was the standard $8.00 an hour.

b.     Jack Richardson was hired as a helper because he did not indicate any prior painting experience.  Richardson's initial pay rate was the standard $8.00 an hour.

18.     Particular Painters at the GE jobsite:

a.     William Ragland was hired as a painter because he had some prior "brush and roll" and spraying experience. His initial pay rate was $9.00 an hour. Four months later, he was given a raise to $10.00 an hour.

b.     Ralo Colvin was hired as painter because he possessed prior experience in painting and sandblasting. His initial rate of pay was $10.00 an hour

c.     Jeff Smitherman was hired as a painter because he indicated on his application that he had prior experience painting industrial structures. His initial pay rate $10.00 an hour.

19.     Particular Blaster Painters at the GE jobsite:

a.     Ervin Tarver was hired as a blaster painter because he had prior sandblasting and painting experience at another major industrial painting company, and he had worked at Mansfield on prior occasions.  His initial pay rate was $12.50 an hour.

Exhibit G.tif

b.      Patrick Lewis was hired as a blaster painter because he had prior sandblasting and painting experience. His initial pay rate was $12.50 an hour.

c.      Earl Shouse was hired as a blaster painter because he had prior painting experience with three different painting companies. His initial pay rate was $12.50 an hour.

d.      Robert Kimberlin was hired as a blaster painter because he sandblasting experience with another major industrial painting company. His initial pay rate was $12.50 an hour.

e.      Johnny Reed was hired as a blaster painter because he had worked as a blaster painter at another major industrial painting company. His initial pay rate was $12.50 an hour. Johnny Reed was eventually promoted to a supervisor, where he made $14.50 an hour.

**D.      Benefits**

20.    Medical insurance coverage is offered only to Mansfield employees classified as "permanent" employees. "Casual" employees are not eligible for insurance benefits.

21.    At Mansfield, a "casual" employee is an employee who holds a position of limited or unpredictable duration. Mansfield contracts of limited duration, such as Mansfield's contract with GE, generally require a great number of casual employees.

22.    For each contract, Mansfield hires the number of employees needed to complete that particular job or contract. Because GE was a short-term work project, Mansfield hired the requisite number of "casual" employees to complete the project.

Exhibit G.tif

23.     Due to the nature of Mansfield's contract with GE, the majority of Mansfield's employees at the GE site were "casual" employees.

24.     As such, each of the plaintiffs was a "casual" employee.

25.     The only Mansfield employee named "Earl" who worked at the GE site was Earl Shouse.

26.     Earl Shouse is a former Mansfield employee and a Caucasian male.

27.     Shouse wrongfully procured an application for insurance coverage.

28.     This application was not intentionally given to him by any employee of Mansfield.

29.     Shouse completed the insurance paperwork and mailed it to Mansfield's business office.

30.     The business office mistakenly processed the application.

31.     As soon as the mistake was discovered, approximately thirty (30) days later, Shouse's benefits were immediately terminated.

32.     If Shouse received any temporary  insurance coverage, it was only the result of mistake and error.

33.     Because Shouse was a casual employee, he was not eligible for insurance benefits.

**E.      Patrick Lewis**

34.     On October 17, 2003, I received a telephone call from Patrick Lewis. Mr. Lewis complained of discrimination against him at the GE site by Johnny Crutchfield, Coy Watson, Johnny Reed, and Robert Kimberlin.

Exhibit G.tif

35.    I asked Mr. Lewis if he would like to make a formal complaint, and he said that he did. I asked Mr. Lewis to send me a written statement describing his allegations in detail, and I provided my Baton Rouge, Louisiana office address.

36.    As Mr. Lewis described his allegations, he was vague and contradictory. I could not make out any specific instances of discrimination or harassment.

37.    Mr. Lewis told me that I should speak to Richard Davenport about alleged problems at the GE site. I told Mr. Lewis that I would call Mr. Davenport, but I still needed a written statement by Mr. Lewis.

38.    The same day, on October 17, 2003, I called Richard Davenport, an African American male and Mansfield employee. Mr. Davenport did not substantiate Mr. Lewis's claims. Rather, Mr. Davenport stated that Lewis tends to make trouble on jobsites.

39.    I called Mr. Lewis on October 18, 2003, and again on October 23, 2003, to follow up, but I was unable to reach him.

40.    I never heard back Mr. Lewis and I never received any written statement from him.

41.    On October 29, 2003, Dean Mansfield, the Division Manager of the Mobile district office, called and informed me that Patrick Lewis had been terminated for insubordination.

42.    I played no role in the decision to terminate Patrick Lewis. I did not learn of his termination until after it had occurred.

43.    I did not tell anyone on the GE jobsite or outside of my Baton Rouge office about my conversation with Mr. Lewis.

Exhibit G.tif

**F.    Jack Richardson**

44.    Paul Calais, Mansfield's Safety Director, received a letter from Jack Richardson on November 10, 2003. The letter was dated November 5, 2003. In the letter, Mr. Richardson alleged, among other things, that he has was "treated unfairly because [he was] friendly with black people."

45.    Mr. Richardson requested that his concerns be kept "strictly confidential."

46.    Paul Calais and I did not disclose the letter or its contents to any other Mansfield employees.

47.    Due to Richardson's request to keep the claims "strictly confidential," the only Mansfield employees who had any knowledge of Richardson's claims were Paul Calais and me.

48.    Paul Calais and I conducted a preliminary investigation, but due to Mr. Richardson's request for confidentiality, we were unable to interview employees at the GE jobsite. We did, however, contact Johnny Crutchfield and Johnny Reed to make some general inquiries about the jobsite. We did not mention Richardson's name. Reed and Crutchfield stated that they had received no complaints of any kind. At that time, the GE contract was nearing an end, and Mansfield was undergoing a reduction in work force.

49.    On December 9, 2003, Johnny Crutchfield terminated Mr. Richardson's employment due to absenteeism.

50.    I was not involved in the decision to end Mr. Richardson's employment, and I did not learn of his termination until a few weeks after it occurred.

## G.    Lamar, Tarver, Ragland, Colvin

51.    Nathaniel Lamar, Ervin Tarver, William Ragland, and Ralo Colvin never made any sort of complaint, formal or informal, to me or to any other employee in Mansfield's corporate office.

52.    I was not aware of the discrimination claims of Lamar, Tarver, Ragland, and Colvin until I received their Notices of Charge of Discrimination from the EEOC after their employment ended.

Cecile Vezinat

Dated:    June 29, 2007

Subscribed and sworn to before me this 29th day of June, 2007.

Notary Public

Lisa McCoy, Notary No. 78189

My Commission Expires:

at death

Exhibit G.tif