# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

**PATRICK LEWIS, et al.,**

    Plaintiffs,

Vs.                                             Case No.: CV 06-497

**K2 INDUSTRIAL SERVICES, INC.,**

    Defendants.

_____

**Plaintiffs' Brief in Opposition To The Defendants' Motion For Summary Judgment**

_____

Submitted by:

Collins Pettaway, Jr.(PETTC9796)
Chestnut, Sanders, Sanders,
Pettaway & Campbell, L.L.C.
Post Office Box 1290
Selma, AL  36702-1290
(334) 875-9264

## TABLE OF CONTENTS

|   | **PAGE** |
|---|---|
| Table of Authorities……………………………………………………………… | 3 |
| Statement Of The Issues…………..……………………………………… | 4 |
| Statement of The Facts………………………….………………………… | 5 |
| Standard For Summary Judgment……………………………………… | 7 |
| Argument……………………………………………………………..……………… | 9 |
| Conclusion…………………………………………………………………………… | 16 |
| Certificate of Service………………………………………………… | 16 |

# TABLE OF AUTHORITIES

| | PAGE |
|---|---|
| Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); FRCP Rule 56 | 7 |
| Anglin v. Household, 17 F. Supp. 1251 M.D. Ala. (1998) | 9 |
| HCA Health Servs. V. Employers Health Ins. Co. 240 F. 3d 982, 991 | 7 |
| Miller v. Kenworth of Dothan, Inc., 277 F. 3d 1269, 1275 (11th Cir 2002) | 10 |
| Walker v. Darby, 911 F. 2d 1573, 1577 (11th Cir. 1990) | 8 |

## **STATEMENT OF THE ISSUES**

The Defendants have raised several issues in their motion. Those categories are responded to as such.

I. Is Defendant K2 Industrial Services, Inc. (K2) a proper party?

II. Was there a Hostile Work Environment?

III. Was there disparate treatment in the following:

   a. Hourly Pay
   b. Show Up Time Pay
   c. Insurance Benefits
   d. Discipline

IV. Did Defendants Retaliate against the Plaintiffs?

IV. Did Defendants violate various state law claims?

   a. Breach of Contract
   b. Negligent Training, Supervision and Retention
   c. Outrage

## **STATEMENT OF FACTS**[1]

Defendants K2 Industrial Services, Inc, (K2) and Mansfield Industrial, Inc., (Mansfield) are United States Companies. K2 is the parent company. It owns Mansfield. At all times relevant here to, Mansfield conducted business at the G.E. Plant site in Lowndes County, AL, located in the Middle District of Alabama.

Mansfield, at all times relevant hereto, was engaged in the business of industrial painting and coating. Each plaintiff was hired at Mansfield by the Superintendent, Johnny Crutchfield. The plaintiffs were given various pre-employment tests to complete. They were asked to sign various documents. Mr. Crutchfield did not go over the documents with them, nor did he go through any orientation with them. The plant site where the plaintiffs worked, G.E., provided an orientation session.

Mansfield, through the Superintendent Johnny Crutchfield, created an all-minority crew, with the exception of a white female who had full use of only one hand, another white male who had various personal

---

[1] These facts are taken from relevant portions of the plaintiffs' depositions and exhibits.

issues and Plaintiff Jack Richardson, who was riding to work with several plaintiffs. This crew, lead by Plaintiff Patrick Lewis, would be assigned the dangerous jobs and jobs no one else wanted. This crew was also not given supplies needed or provided to the rest of the crews. Plaintiff Ralo Colvin, working with another crew, would get gloves and other supplies for the crew and supply them. When Colvin was found out by Johnny Crutchfield, he was assigned temporarily to the crew. Various racial slurs and epithets were common at defendant's place of work. Various employees, including management and supervisory employees wore racially divisive attire and tattoos, including the plant superintendent. Plaintiffs met with counsel to file complaints of discrimination. They also arranged and met with attorneys from EEOC and gave statements. An African American employee named Ben Gayle, worked on the crew with most of the plaintiffs and was very friendly with the plant superintendent. Somehow word got back to the superintendent of the plaintiffs' plans and each was terminated for various reasons prior to the formal filing of charges with EEOC.

## **STANDARD FOR SUMMARY JUDGMENT**

A summary judgment is to be considered if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); FRCP Rule 56. Facts which might affect the outcome of the case must be considered. Id. Summary judgment will not lie if the dispute about a material fact is "genuine", that is, if such evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. It is the courts function to not himself weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. Id at p. 249. The U.S. Supreme Court went further to liken this task to that of a directed verdict under FRCP Rule 50(a). If reasonable minds could differ as to the import of the evidence, a verdict should not be directed. Id at p. 250-251. The 11th Circuit adds that the moving party must demonstrate that there is no genuine issue as to any material fact. *HCA Health Servs. V. Employers Heath Ins. Co.*, 240 F. 3d 982, 991 (11th Cir. 2001). A mere scintilla of evidence

supporting the opposing party's position will not suffice.  There must be enough of a showing that the jury could reasonable find for that party.  *Walker v. Darby*, 911 F. 2d 1573, 1577 (11th Cir. 1990).

**ARGUMENT**

**I.   Is K2 A Proper Party?**

The defendant has submitted the affidavit of Cecile Vezinat, the human resources director for Mansfield. She states that Mansfield is a wholly owned subsidiary of K2. There is no evidence that K2 is separate and apart from Mansfield or K2 has no control over Mansfield as argued and referenced in the defendants' brief at pp. 1 and 2. Such relationship is determined by the facts, not by mere characterizations. *Anglin v. Household*, 17 F. Supp. 1251 (M.D. Ala. 1998) Defendants have offered no facts to distance themselves, nor a contract to show that K2, although "wholly" owning Mansfield, has no input or control over its direction. In addition, the statements of Plaintiff Ralo Colvin (exhibit 6) and the letter with the employee insurance benefits from K2 for Mansfield (exhibit 10) show that the companies work together with the employees. Thus, K2 is the parent and owner of Mansfield. K2 is a proper party.

**II.  Was There A Hostile Work Environment?**

To establish a claim to a racially hostile work environment, the plaintiffs must show that (1) they belong to a protected group, (2) they have been subject to unwelcome harassment, (3) the harassment was based on a protected characteristic, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of their employment and create an abusive environment, and (5) the defendant is responsible for such environment.  *Miller v. Kenworth of Dothan; Inc.*, 277 F. 3d 1269, 1275 (11th Cir. 2002).  It is clear that the plaintiffs are in a protected class.  Each of them are African American except Jack Richardson. Mr. Richardson qualifies by being grouped with the other plaintiffs by association.  This prong is not being disputed by the defendants. The second prong has been established by the deposition testimony of each plaintiff and exhibits 3-9. The testimony is replete with evidence of cursing towards the plaintiffs (by being African American), logos and offensive remarks being worn by co-workers or exposed to them, racial epithets being constantly used, (defendant tries to

counter this by stating that many of the plaintiffs used the "N" word. Such acts were not offensive, not unwelcome and not in the same context) name calling, even by the Superintendent Mr. Crutchfield, (calling Lewis the buzzard painter) and unsafe working conditions, (forcing plaintiffs to work up high and not demanding that their white counter-parts do so, and forcing them to work when the safety CO2 horn was giving a warning). The third and fourth prongs are satisfied by the way the plaintiffs were treated wit not having supplies, and have to do dangerous work assignments. Also, when Plaintiff Richardson and Colvin were punished, they were sent to the crew with the other plaintiffs. Lastly, it was the management personal who instituted or were aware of this conduct. Plaintiffs made their complaints.

To counter, defendants argue that it took steps to disseminate its policies. However, that is a disputed fact. See Exhibit 1. The employees signed several documents, but none were given to them to read or were explained to them. Exhibit 3 shows that the investigation by EEOC of the charges made of

11

discrimination by the plaintiffs found cause to believe them. This is rare with EEOC.

**III.  Was There Disparate Treatment?**

a.  Hourly Pay

The plaintiffs' evidence in this regard consist of the fact that they were doing jobs above the "helper" classification they were in, but not paid for such.

b.  Show Up Time Pay

The evidence plaintiffs presented during their deposition testimony and exhibits 4-9 was very strong as it related to this area. Plaintiffs saw various check stubs of white co-workers who were allowed pay for showing upon rain days. Also, Jack Richardson, a white male, received such pay. Ben Gayle, an African American, who was liked by Johnny Crutchfield, received such pay. Ralo Colvin, working with another crew, received such pay after complaining. Colvin pp. 119, 129-131. The other plaintiffs except Nathaniel Lamar on one

occasion because he signed the book with the others, did not. Lamar pp.128-131.

c. Insurance Benefits.

None of the Plaintiffs were offered or received insurance benefits except Ralo Colvin after he came back from a lay-off, and was terminated shortly thereafter. Defendants now claim that employee Earl Shouse, a white male identified by the plaintiffs, received his benefits by mistake. No documentation has been offered to show this, only the self-serving affidavit of the human resources director.

d. Discipline.

Plaintiffs provided during their deposition testimony that they were treated differently than their white counterparts. This is even listed in defendants' brief. Exhibit L is a copy of the investigation and statements concerning one of the supervisors, Corey Watson, a white male, having an altercation with another minority worker. It was alleged

13

that Watson threatened the minority worker with a weapon. The final result was that the superintendent sent the minority worker off and Watson was vindicated. Plaintiff Patrick Lewis was fired allegedly for cursing. Other employees cursed but were not fired. Plaintiff Jack Richardson was very clear that he was late, missed work and didn't call in but was not spoken to. When the other plaintiffs were late, they were immediately spoken to. Jack Richardson was only fired after word got out that they had seen an attorney to file EEOC complaints.

**IV.  Retaliation.**

None of the plaintiffs were fired until after the word was out that they sought counsel and the EEOC. A co-worker, Ben Gayle, who is good friends with the superintendent, stated that he had heard the plaintiffs filed a lawsuit. Ragland depo, p. 177-178. Defendant offers non-discriminatory reasons for the terminations, but they all happened after the complaints with counsel. Prior to that time, Plaintiff Richardson was

14

placed with Lewis crew because he hung out with them. Plaintiff Colvin was placed with Lewis' crew because he gave them gloves and supplies. Plaintiff Ragland was terminated for poor work performance. Yet, he received satisfactory evaluations and received his raises. Also, the reason given by the defendant to the Georgia Department of Labor concerning Mr. Ragland's termination was that Mr. Ragland refused to obey rules, a position that failed and the defendant lost the hearing. Ragland pp. 170-185.

**V. State Law Claims.**

    a.   Breach of Contract

       A review of this claim is not supported by the evidence. It will be withdrawn.

    b.   Negligent Training Supervision and Retention.

The defendant primarily argues that the limitations of actions have passed. That claim will be withdrawn.

    c. Outrage.

The defendant primarily argues that the limitations of actions have passed. That claim will be withdrawn.

15

**VI. <u>Conclusion</u>.**

Based on the foregoing, the motion should be denied as it relates to the Title VII claims and proceed against both defendants.

        Respectfully submitted,

        <u>/s/ Collins Pettaway, Jr.</u>
        Collins Pettaway, Jr.PETTC9796

OF COUNSEL:

CHESTNUT, SANDERS, SANDERS,
PETTAWAY & CAMPBELL, L.L.C.
P. O. Box 1290
Selma, AL  36702-1290
(334) 875-9264

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that I have on this the 14th day of August 2007 electronically filed with this Court using the CM/CMF efiling system which will send notification upon all counsel of record.

        <u>/s/ Collins Pettaway, Jr.</u>
        OF COUNSEL